Your Honors, Larry Daniels, representing the California Attorney General for the Warden in this case. Although the District Court enunciated the correct standards for sufficiency and habeas review, it failed to properly apply them and merely substituted its own judgment for those of the jury in the California Court of Appeal. The District Court misapplied Jackson v. Virginia by taking each piece of circumstantial evidence by itself and finding no reasonable inferences of guilt from each piece alone, rather than examining the entire record and taking reasonable inferences from that, as Jackson compels. Purporting to hold that it did not merely disagree with the State Court, the District Court actually also misapplied the standard for reviewing State Court judgments on federal habeas, as set out in 28 U.S.C. § 2254D, and that it granted relief based on a mere disagreement about what the evidence showed or failed to show. Even if this were a de novo Jackson review, the case would easily pass muster. There was substantial, indeed copious, evidence showing that Petitioner intended to promote further or assist in any criminal conduct by gang members. Petitioner was an EMF gang member and committed this robbery in the heart of EMF gang territory where other gang-related robberies had occurred. All the dialogue and interaction between the victim, Bohorquez, and Petitioner and his cohorts also showed that Petitioner was hazing and intimidating the victim, as well as anyone watching, into submitting into the gang's authority in the future. How specific does the other criminal activity have to be? In other words, intimidating is occurring right then, and I suppose you're saying that it's a way of establishing territory, but what other crime is the specific intent to accomplish? Well, Your Honor, first of all, robberies, potential robberies in the future. The gang expert testified that a primary activity of this particular gang, the EMF gang, was committing robberies and petty thefts. And so People v. Gardalay, a California Supreme Court case, says that if it's to protect the gang's territory in order to commit crimes in the future, that's sufficient, and that's what it was here. It doesn't have to be a particular crime. They don't have to say, oh, we're going to do this to commit a particular murder in the future, for example. How did this protect the territory to commit crimes, though? Obviously the victim was not a threat to the territory. I respectfully disagree, Your Honor. Just because he didn't acknowledge or didn't know they were? Well, he didn't merely not acknowledge it. He was disrespectful. The gang member, the petitioner in this case, said, if you don't know me, don't be talking to me. After that, the victim said whatever and walked away. The jury could reasonably infer that that was disrespectful given that this was in the heart of gang territory where other gang-related robberies that were turf-oriented occurred. Well, I get that part of your argument, but I don't understand how that helps the gang promote further robberies. Well, Your Honor, if this were a different gang member coming in from a different crew saying, being disrespectful of the idea of invading, but this was simply an unknowing victim that walked in and managed to run afoul of the gang inadvertently. I don't understand what the nexus is between that and how that would help them commit future robberies. First of all, this is a stranger, and a stranger in the gang's territory. And the California courts have said that the fact that the defendant does not know the stranger, that is a factor suggesting there is intent. So there is something, the fact that a stranger walking in. The stranger then initiated the encounter with Petitioner, said something like, how do you do, or nodded towards him, after which the Petitioner said, do you know me, don't be talking to me. He obviously considered that, the evidence shows he obviously considered that to be a threat. He then followed that up with, where are you from, after which the victim again just sort of walked away. And then the Petitioner said, after all that, do you want to get jacked, and I am Lil Risky from EMF. He stated his gang name and his gang moniker. There was no reason for him to say that, if this were just a normal robbery. The most reasonable inference from that is that he was saying that to intimidate him into submitting to his authority. Let me ask you about the gun question. What evidence is there that a rational jury could find that there was a gun in one of the waistbands, when the evidence before the court was it was a handle? Well, Your Honor, the victims, the police officer at trial gave testimony about the victim's inconsistent statements, earlier inconsistent statements, that he believed that this was a, I think it was a .38 or .44. He said it was a gun, and he identified it as one of two types, and he said it was silver. But when he went to testify, he did not say that. He said he couldn't tell what it was. And then the police officer came in and had his prior statement. I assume that was for impeachment. It was for impeachment and also for the truth of the matter asserted under California evidentiary law. So under California law, even though it's just impeachment, it can be used as substantive evidence? That's correct, Your Honor. And is that part of the evidentiary code in California? Yes, Your Honor. I haven't practiced law in California for 30 years, so I'm a little. And what code section is that, so I could read it? I don't have it offhand. I could find it by the time I get for rebuttal, if you'd like. Is it in your brief? It's actually in the report and recommendation, I believe, in a footnote. Let's see here. On page 178 of the excerpts of record, note number 2, the magistrate judge says California evidence rule section 1237. That is actually for a prior, what is it? Prior inconsistent statement. It's not actually prior inconsistent statement. Part of the testimony was introduced prior to the statement. Part of it was introduced as prior recollection. Prior recorded recollection, I think, is the name of the hearsay exception, where you have the actual police report, and if it's, if it is, if the victim can't remember but says that it was a testimony he couldn't remember, I didn't get that. Part of that. As to that, it was inconsistent. Okay. So in any case, it is in the, I have to, I can get it for you. That's all right. That's all right. Don't waste your time with it.  It was just a curious point. I'm sorry, Your Honor. I can tell you that it is, for the truth of the matter, asserted also. It was admissible, but I guess the additional question is then it can be considered substantive evidence in support of the conviction? Yes, Your Honor. Okay. You have about two minutes left. Do you want to reserve? Yes, please. Okay. Thanks. Morning, Your Honor. Isaac Guillen on behalf of Mr. Garcia. What we have here is just basically an individual who committed a crime. He happened to be a gang member, and I believe that, and I agree with the descending justice of the California Court of Appeals and the magistrate judge and the district judge, that, in fact, this was just a crime committed by a gang member. However, as Justice Thomas asked, what's the nexus? And there is no nexus, and in order for 186.22 of California Penal Code to apply, there has to be some sort of specific intent to further some further crime, some other crime of the gang. And I think what strikes me is, and maybe you could address this, the most difficult point for your client, is his confrontation, that it strikes me as not being a simple robbery if you identify yourself and identify your gang. Usually robbers don't want to be known by their victims. They would rather get away and not be caught. In this instance, the robbery of the money and the bicycle was attended to by him identifying himself by his gang moniker and also by the name of the gang. Doesn't that strike you as being not a simple robbery? Actually, it doesn't. And if you look at the context of what they're saying, these gang crimes, in fact, there was a confrontation between the two individuals. And really it had nothing to do with a gang. It just was a confrontation. As a matter of fact, I believe the store owner said they were having an argument about something is the way he perceived it. And him mentioning himself, he's just talking about who he is as a person. Maybe he wants this individual to know who he is, but I don't think it had anything to do with the robbery itself. Well, that's that's one interpretation, of course. But he had already identified this person wasn't from around there. And the gang he mentioned is the gang who has this turf. It strikes me there's a lot of circumstantial evidence here that that would seem to indicate this was more than a simple robbery. Well, actually, I don't know. I don't believe that Mr. Garcia actually knew that the individual wasn't from the area. I believe that came out later on, but not at the time of the robbery. I would also include that the judge who actually sat and listened to the evidence, listened to the witnesses, listened to the gang expert, during sentencing basically stated factors in mitigation. And that trial judge basically said this is a spontaneous occurrence, I believe. It was not planned. There did not appear to be any evidence of forethought. It seemed to be just an immature, adolescent, spontaneous reaction to a situation. And that was the argument situation. It had nothing to do with the gang. And, in fact, the trial court goes even further and actually stays the two-year gang enhancement. Which trial court are you referring to now? The actual trial court, the court that sat there. The state trial court? The state trial court during sentencing actually said that in mitigation that they didn't believe that it was this scheme or plan or this elaborate thing as the people. Well, does it have to be elaborate? I mean, it seems to me if you're turf protection by its very nature often would involve spontaneous activity. I would agree if, in fact, it had to do something else with other types of situations as, for example, like the court stated earlier, if it was a rival gang member or if it was some other sort of situation. However, I think it goes a little further than that. It goes to whether a rational trier fact based on the evidence presented could reach that beyond reasonable doubt. However, I don't think their expert, and that's why they have experts in there for gangs and for other situations, is to explain some of these psychology and gang behavior and certain reasons why they do certain things. But the expert, it was lacking. And I think that's one of the biggest keys in this case is that the expert didn't put together robberies. And then I guess he stated they were turf oriented. And I don't understand how they get robberies and turf oriented. I believe they're two different things if you read some of the other. Well, the state doesn't quite make this argument unless I'm misinterpreting what they're saying. But it seems to me that one reasonable inference is that the turf protection had a nexus with robbery because they would try to intimidate people into turning over money and making the robberies easier. I mean, that's one plausible, I suppose, connection between robbery and turf protection. I would believe that if like in the Gardley case where it was in an isolated situation, a carport area where these gang members hung out and they sold drugs. But the expert testified that, in fact, this gang claims the whole city of El Monte. And I don't know how many thousands of people live in the city of El Monte. But if robberies are occurring all over, I think it's not that broad. It isn't that broad where they're committing these crimes and all of a sudden the residents of the whole city of El Monte or what you say. But if it was more isolated, as in Gardley, where it was the housing projects in that particular area where they sold drugs, I see that as a little different. In order to affirm the district court, we have to find, and we're reviewing de novo the district court, we have to find the district court was correct on its assessment of what the state court did, both the trial court and the court of appeal. What's your burden to demonstrate as far as tipping over a state factual finding? What do you have to show in federal habeas? Well, Your Honor, under Jackson, we have to show that no rational fact would find based on the facts presented. So what we'd have to say is all the circumstantial evidence before a fact finder, no rational fact finder would find the way this particular fact finder did. Correct. Not just that they wouldn't find, but that they wouldn't find beyond a reasonable doubt. I think that's the key, and Jackson points that out, that it's not whether one argument is better than the other, it's whether or not a rational trier of fact can find those elements of the offense beyond a reasonable doubt. And I don't believe that. And why do you say it's not rational? That's a pretty high burden. Why do you say it's not rational? Well, because based upon the evidence presented, and I know in the briefings there's a bunch of other assumptions and a bunch of other things brought out, but if you take the evidence presented, that in fact, and I agree with the other courts, like I said, the dissenting judge in the court of appeals and the magistrate judge and district judge, that in fact the evidence presented was that Mr. Garcia was a gang member, that they committed a robbery. They committed a robbery in an area where other robberies by EMF gang members had been committed. However, there was no connection. There's no nexus to the specific intent to further the crimes of other members of the EMF gang. There's nothing there that connects it. And in order for 186.22 to stand, there has to be a connection, a specific intent.  The government's going to come back and rebuttal, and you won't be able to respond and say, well, the expert testimony filled in that particular part by showing they're protecting their turf, that that's a part of what the gangs do, is they protect their turf, and this robbery had to do with that. What would be your response to that? Well, I don't think that this particular robbery was in any way protecting their turf. It's not like, hey, we're hanging out here, and anybody who comes into the area, as in Gardley, they were kind of, that was their area, this guy comes into their area, they attack him. It's not one of those situations had the alleged victim in this case had just gone in the store and not said anything to Mr. Garcia. There wouldn't have been a confrontation, and therefore there wouldn't have been a robbery. It wasn't, there isn't anything there. It was a spontaneous situation, as the trial judge said, spontaneous adolescent, immature response to this argument. It was an argument between Mr. Garcia and the individual. It had nothing to do with gangs or anything of that nature, and I believe that the trial court, in staying the gang enhancement, believed that as well, and he sat there and listened to all the testimony. Thank you for your argument. Rebuttal? What, if anything, did the experts say about robbery? Pardon me, Your Honor? What, if anything, did the experts say about robbery in its gang testimony? Well, the experts said that a primary activity of the EMF gang is committing robberies and petty thefts, which this was sort of similar to a petty theft in a sense, too, because it was for a gang. It was for a small amount of money, at least initially. The expert also described three particular robberies that occurred in and around this little five points, which was this particular neighborhood, this particular part of El Monte that was the heart of EMF territory, where EMF committed these robberies. And the expert also testified that EMF robberies were, quote, turf-oriented. Thus, their jury could conclude from that that from the turf-oriented. What does that mean? No, in terms of robberies. Well, turf-oriented. You mean they rob within a particular turf? I think that if a robbery is turf-oriented, that means that it is to, it asserts your authority over that neighborhood. By committing that robbery, it lets you know that you can do that with impunity. You see in this case, the particular robber walked away. The expert didn't quite say that, though, did he? No, Your Honor. But that's certainly, I think that's the most reasonable inference. The expert doesn't have to testify to every particular conclusion. Excuse me. You can correct me if I'm wrong. It seems to be California cases, and it seemed to say if it's foreign, you can't, you can't enhance turf protection if another gang comes in. That's pretty clear. I don't know if there's a case that goes quite this far that says that when somebody, and you certainly can enhance if there's a nexus between that and other criminal activity. What you can enhance for is simple gang membership. So this doesn't quite fit the usual paradigm on this enhancement, and I guess that's what I'm struggling with. Well, Your Honor. You have to make a lot of logical leaps from the evidence, because the expert didn't testify specifically about connecting up specific crimes with this. He said it was turf-oriented, robberies are turf-oriented, and maybe I'm missing something, but I didn't see any testimony that said, just explain to me why this particular robbery helped promote further robberies within the area. Well, if the expert testifies, which he did here, that it's turf-oriented, their primary activity, and the expert also testified that these gangs used intimidation tactics to have the victims not testify against them to retract their testimony, which appears is what happened in this case. We don't know that they used these tactics. We know that they retracted the testimony. These are very reasonable inferences, and in response about the cases, like all sufficiency cases, you don't have the exact case to support. That's obviously not the test. Right. What's your best case, though? What's the best case? What do you think is your best case that supports this scenario? I think the best case is People v. Gardalay. It's the closest to this, the California Supreme Court case, that said that a crime committed to secure the gang members' stronghold. That was another gang invasion, wasn't it, if I'm recalling the case? Yes, Your Honor. Then there's two other cases, Ortiz and Olguin, which said the fact that a stranger walks into, not walks into, the fact that it's committed on a stranger also is indicative. Which case is that? People v. Olguin, O-L-G-U-I-N. So in your argument, by your argument then, it wouldn't be necessary for this victim to have been a crip. He can belong to no gang at all. Your argument is that the California cases say even the stranger coming in, if it's related to protecting turf or asserting themselves over their turf, that the California cases say that's sufficient? Well, Olguin was another gang case, too, wasn't it? Olguin. Yeah. The fact that they didn't know. It wasn't a stranger. It wasn't the fact that, well, it was a stranger. They didn't know this person. It wasn't the fact gang members versus non-gang members. The fact that they mentioned the fact that they didn't know them. Well, they confronted a rival gang member after crossing out gang-related graffiti. Right, and one of the things the court said was the fact that they didn't know this person was something that was probative. But I do want to stress that this is not a comparison shopping type of analysis of sufficiency. Now, it's not trying to see is this case as good as the other cases. What it is is if Fisher were to come up with a case where the California court said there's not sufficient evidence and this was the same or less evidence than that, well, this might be a different story. But we're talking about a bunch of different cases. The California Court of Appeal gave a reasonable interpretation of these cases. And we submit that it should be upheld in the district court decision reverse trial. Okay. Thank you much for your arguments, both of you. And in addition to the arguments, we have read your briefs, and they're very good. And we thank you for those. Next case on the argument calendar is biophysics, chiropractic versus United States. Thank you.
judges: Wallace, Canby, Thomas